IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

VICTOR SANCHEZ-RODRIGUEZ                                                    PETITIONER
Reg. #29415-079

v.                                   2:17cv00119-JLH-JJV

GENE BEASLEY, Warden, Forrest
City Federal Correctional Complex                                           RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I. PROCEDURAL HISTORY

Victor Sanchez-Rodriguez was arrested by Mexican law enforcement officials on March 28, 2004, under suspicion of involvement with an organization of illegal alien smugglers. (Doc. No. 1 at 4.) After determining that Mr. Sanchez-Rodriguez was not a Mexican citizen, he was extradited to the United States on February 8, 2005. (Doc. No. 7 at 2.) A jury in the Southern District of Texas convicted Petitioner on several counts, including "conspiracy to harbor and to transport the thirty-eight aliens (count 1), for aiding and abetting the harboring of certain aliens (counts 3, 11, 13–17), for aiding and abetting the transportation of certain aliens (counts 22, 30, 32–36, 42, 43, 58), and for harboring and transporting the minor alien (counts 59 and 60)." *United States v. Rodriguez*, 553 F.3d 380, 388 (5th Cir. 2008). Petitioner was sentenced to 280 months in prison. *Id*. Mr. Sanchez-Rodriguez appealed the conviction to the United States Court of Appeals for the Fifth Circuit, and the judgment was affirmed on December 15, 2008. *Id.* In affirming the conviction, the court recited the facts of the case as follows:

1. The Smuggling Conspiracy

The government alleged that Victor, Emma, and Serrata were part of a loose organization of illegal-alien smugglers, or "coyotes," operating in South Texas. Within that organization, their function was to pick up Latin American illegal aliens who had already come as far as the Mexican border, bring them across the Rio Grande River into the area of Brownsville, Texas, shelter them for short periods of time, and hand them over to other coyotes responsible for transporting them north to Houston.

The plan was orchestrated by Karla Chavez-Joya, a Honduran living in the United States, who connected coyotes such as Victor, Emma, and Serrata to others who would escort the aliens northward. Typically, it appears, Chavez-Joya arranged for groups of aliens to be loaded into a truck trailer, driven through the immigration checkpoint near Sarita, Texas, and transferred into vans that would take them to Houston. Abelardo Flores, Jr., recruited drivers for Chavez-Joya, looking especially for non-Hispanic drivers with non-Texas license plates. One such driver was Tyrone Williams, who agreed in early May 2003 to transport a number of aliens in his truck trailer for a fee. The pickup site for the run was to be near Harlingen, Texas, and the present defendants were among the coyotes who funneled the aliens into the United States. Of note here are the illegal aliens brought across the border by Victor, Emma, and Serrata.

2. Victor and Emma

The aliens who testified against Victor and Emma told similar stories. They began their journeys in their native countries, where they hired local smugglers to bring them north to Matamoros, Mexico, just across the Rio Grande from Brownsville. There, the aliens typically contacted Victor and Emma at phone numbers provided by the local smugglers, though at least one alien met with Victor in Mexico. Victor, workers of his, or his son with Emma, Victor Jesus Rodriguez ("Victor Jesus"), then escorted the aliens across the river in inflated tubes and took them to Victor and Emma's house. The one exception was a small boy deemed too weak to cross the river in that way; he was brought through the border checkpoint by Emma, bearing her grandson's identification papers, along with a number of other small children whom Emma instructed to refer to the boy as their brother.

Once across the border and in Victor's and Emma's hands, the aliens made financial arrangements for transportation north to Houston. In each case, Victor and Emma demanded payment of approximately $2000, with half payable immediately and the remainder payable when the alien reached Houston. Victor and Emma typically gave the aliens access to phones for calling relatives to arrange wire transfer of the payment.

After the Rodriguezes received the first installment, they secreted the aliens in a series of houses, trailers, and sheds in and around Brownsville, sometimes with

their respective parties, sometimes together with other illegal aliens brought into the United States by the Rodriguezes or others. Most ominously, a number of aliens reported being kept for some time in a densely crowded house with no room to sit down or sleep. Some of them called the Rodriguezes to complain about the conditions there, and the Rodriguezes moved them out of the house for a night.

There was discussion, naturally, of the means of transportation. The aliens were typically offered a choice between going north on foot or riding in a truck. Victor and Emma steered the aliens, even ones who initially preferred to walk, in the direction of the truck, saying they would be safer, move faster, and be harder to detect. A number of them expressed concern with riding a long distance in a truck trailer, but Victor and Emma assured at least six of them that they would be riding in the truck's cab, not the trailer. At least one alien left his conversation with Victor under the impression that the truck would take him directly to Houston with no stopping.

Ultimately, the relevant aliens smuggled by Victor and Emma, together with a large number of others, were brought in vans—some by Victor Jesus personally—to an increasingly crowded field outside Harlingen late at night on May 13, 2003. Despite Victor's and Emma's assurances that several of their aliens could ride to Houston in the truck's cab, none of the Rodriguezes stayed at the loading area or made any other effort to separate their aliens from the others; Flores, who loaded the trailer, stated that he had never heard of Victor or Emma at the time. Victor and Emma reserved the minor alien from the trailer trip, apparently planning to send him to Houston separately.

*United States v. Rodriguez*, 553 F.3d 380, 384-86 (5th Cir. 2008)

Now, Mr. Sanchez-Rodriguez, an inmate at the Forrest City Low Federal Correctional Institute, seeks relief from this Court through the filing of a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus.  (Doc. No. 1.)  After careful consideration of the Petition, for the following reasons, I find the issue is moot and recommend the Petition be dismissed.

## II.     ANALYSIS

Mr. Sanchez-Rodriguez raises just one claim in his Petition.  He seeks, "Jail Time Credit from March 28, 2004 to October 06, 2006.  All of which re[la]ted to the charges on which he was convicted and sentenced on **no matter** where he was in fact, being held."  (Doc. No. 1 at 4, *emphasis in original*.)  Although he seeks credit for all the time he spent in pretrial custody, it

appears Petitioner is mainly concerned with being credited for the time he spent in Mexican custody.

In countering Mr. Sanchez-Rodriguez's Petition, Respondent argues in order for Mr. Sanchez-Rodriguez to be eligible for a judicial review of credit computation, he must first exhaust all administrative remedies available. *United States v. Wilson*, 503 U.S. 329, 335 (1992). Respondent has provided substantial evidence showing Mr. Sanchez-Rodriguez has failed to exhaust any of the administrative remedies set out in 28 C.F.R. § 542.10 - 542.16. (Doc. No. 7.) Therefore, the Petition should be dismissed on this basis alone.

Regardless, the Bureau of Prisons did, in fact, calculate Mr. Sanchez-Rodriguez's sentence correctly. Mr. Sanchez-Rodriguez says he was arrested by Mexican law enforcement on March 28, 2004, and turned over to the United States on February 8, 2005. (Doc. No. 1 at 3-4.) He remained in pretrial custody until sentencing on September 10, 2006. (*Id.*) According to BOP records, Petitioner was given "Jail Credit" from "03-28-2004 [thru] 09-10-2006." (Doc. 7-3 at 4.) Therefore, Petitioner has already received the pretrial custody credit he seeks through this Petition. So the Petition should be dismissed on the merits as well.

### III.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED that the Petition for Writ of Habeas Corpus (Doc. No. 1) be dismissed.

DATED this 25th day of October, 2017.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE